[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 10-15894

_____

D.C. Docket No. 2:07-CR-00395-RDP-RRA-1

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

JAMES LERAY MCINTOSH,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(January 7, 2013)

Before DUBINA, Chief Judge, CARNES and GILMAN,* Circuit Judges

_____

* Honorable Ronald Lee Gilman, United States Circuit Judge for the Sixth Circuit, sitting by designation.

GILMAN, Circuit Judge:

James Leray McIntosh was sentenced to a term of 120 months of imprisonment, the mandatory-minimum sentence for his convictions on a drug-trafficking charge and a weapons charge. Due to a technical error in the original indictment and a more substantial mistake by the government in its handling of that error, no indictment was pending against McIntosh at the time of his sentencing. This has caused McIntosh to challenge the power of the district court to sentence him at all. He also challenges the length of his sentence due to the enactment of the Fair Sentencing Act of 2010, Pub. L. 111-220, § 2(a), 124 Stat. 2372 (the FSA), after he committed his offenses but before his sentencing.

Although we are unaware of any prior case with a substantially similar factual scenario, we conclude that the district court retained the power to sentence McIntosh, and that the exercise of that power did not violate any of his constitutional rights or run afoul of the Federal Rules of Criminal Procedure. The sentence imposed, however, must be vacated because the court did not apply the U.S. Sentencing Guidelines as revised by the FSA. We therefore **AFFIRM** the district court's orders denying McIntosh's motions to terminate the proceedings and withdraw his guilty plea, but we **VACATE** the sentence and **REMAND** the case for resentencing consistent with this opinion.

## I. BACKGROUND

McIntosh was indicted in September 2007 on one count of possessing five grams or more of crack cocaine with the intent to distribute the drug and on one count of carrying a firearm during and in relation to a drug-trafficking offense. The charges arose from a November 2005 traffic stop during which an officer discovered cocaine and a firearm in McIntosh's vehicle. But the indictment mistakenly alleged that McIntosh committed these offenses in February 2007.

The government discovered this mistake after McIntosh pleaded guilty to the charged offenses but before his sentencing. To correct the error, the government obtained a second indictment alleging the proper date of the offenses and then filed a motion to dismiss the original indictment without prejudice, which the district court granted. Why the government chose this course of action, as opposed to simply filing a superseding indictment or recognizing that the error was merely a technical one not requiring any correction, is a mystery that its counsel could not explain at oral argument other than to characterize the steps taken as an "overreaction." The consequences of the government's misstep, however, have engendered the host of constitutional and procedural challenges set forth below.

To begin with, McIntosh entered a conditional guilty plea to the new indictment, but reserved his right to appeal his conviction on double-jeopardy grounds. After the court sentenced McIntosh to 120 months of imprisonment, he timely appealed.

3

This court agreed with McIntosh that the second indictment violated the Double Jeopardy Clause of the Fifth Amendment. *United States v. McIntosh*, 580 F.3d 1222, 1229 (11th Cir. 2009) [hereinafter *McIntosh I*]. It found that jeopardy attached when the district court accepted McIntosh's original guilty plea and that the acceptance of such a plea on each count was "itself a conviction." *Id.* at 1228 (internal quotation marks omitted). Because the dismissal of the original indictment, which contained only a technical error regarding the date of the offenses, "did not vacate the convictions or set aside the guilty plea," *id.*, "the Double Jeopardy Clause prohibited a second prosecution of McIntosh for the same offenses." *Id.* at 1229. This court therefore vacated the judgment of conviction and remanded the case with instructions to dismiss the second indictment. *Id.*

Once the district court dismissed the second indictment, the government moved to set a sentencing hearing based on the convictions established by McIntosh's guilty plea to the original indictment. The court granted the motion over McIntosh's objection. McIntosh then filed a motion to terminate the proceedings, arguing that the court lacked jurisdiction to proceed to sentencing absent a pending indictment and that such a sentencing would violate the Double Jeopardy Clause. The court denied the motion and, after this court dismissed McIntosh's interlocutory appeal for lack of jurisdiction, set the case for sentencing in December 2010.

4

McIntosh also objected to his Presentence Report in its entirety, moved to withdraw his guilty plea, and argued that the FSA's revised penalty provisions should be applied to his sentence. His motions were denied and his objections were overruled. The court then sentenced him to a 120-month term of imprisonment, the mandatory-minimum sentence provided by the pre-FSA Guidelines. This timely appeal followed.

## II.  ANALYSIS

### A.    Standards of review

We review de novo questions concerning alleged violations of the Double Jeopardy Clause, *McIntosh I*, 580 F.3d at 1226, a district court's subject-matter jurisdiction, *Mesa Valderrama v. United States*, 417 F.3d 1189, 1194 (11th Cir. 2005), the sufficiency of an indictment, *United States v. McGarity*, 669 F.3d 1218, 1232 (11th Cir. 2012), and the legal interpretation of sentencing statutes, *United States v. Burge*, 407 F.3d 1183, 1186 (11th Cir. 2005). The district court's denial of a motion to withdraw a guilty plea, on the other hand, is reviewed under the abuse-of-discretion standard. *United States v. Medlock*, 12 F.3d 185, 187 (11th Cir. 1994).

### B.    Sentencing McIntosh based on his guilty plea to the original indictment did not violate the Double Jeopardy Clause

5

The Double Jeopardy Clause of the Fifth Amendment provides that "[n]o person shall . . . be subject for the same offence to be twice put in jeopardy of life or limb."  U.S. Const. amend. V.  "Based on the fundamental notion that serial prosecutions by the government are abusive," *McIntosh I*, 580 F.3d at 1227, the Clause "protects against a second prosecution for the same offense" and "protects against multiple punishments for the same offense,"  *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969).  McIntosh argues that proceeding to sentence him based on his guilty plea to the original indictment, after that indictment was dismissed, constitutes a second prosecution for the same offense in violation of the Double Jeopardy Clause.

As this court noted in *McIntosh I*, jeopardy attached once the district court unconditionally accepted McIntosh's guilty plea to the original indictment.  580 F.3d at 1227-28.  But McIntosh contends that the subsequent dismissal of the original indictment terminated the case, making any further proceedings in the case a second, and thereby unconstitutional, prosecution for the same offense.  His argument, however, is directly at odds with this court's conclusion from *McIntosh I* that the dismissal of the original indictment did not withdraw McIntosh's guilty plea or vacate his conviction.  The court noted that McIntosh's "conviction still exists and awaits a sentence," *id.* at 1228, and reiterated in the summary of the holding that his "initial conviction was never vacated," *id.* at 1229.

6

In short, dismissing the original indictment did not terminate the case as McIntosh asserts.

McIntosh's double-jeopardy argument ultimately depends on the proposition that the dismissal of the original indictment, after his conviction but before his sentencing, terminated the case. But he cites no authority to support such a proposition. To the contrary, his sentencing was the natural progression of a single, continuous course of jeopardy. Because the original prosecution did not end, the sentencing that proceeded from that original prosecution cannot be characterized as a second prosecution. *See Schiro v. Farley*, 510 U.S. 222, 230 (1994) (refusing "to treat the sentencing phase of a single prosecution as a successive prosecution for purposes of the Double Jeopardy Clause"). That the government unconstitutionally placed McIntosh in double jeopardy through the prosecution of a second indictment does not transform the first and only sentencing on the original indictment into a double-jeopardy problem. The sentencing was neither a second prosecution of, nor a second punishment for, the same offense. *See Pearce*, 395 U.S. at 717. As such, proceeding to sentencing after McIntosh's conviction did not violate the Double Jeopardy Clause.

**C.     The district court retained jurisdiction despite the dismissed indictment**

McIntosh next argues "that an indictment is a jurisdictional predicate and prerequisite" for prosecuting a criminal case. He cites precedent from the Supreme

7

Court and lower courts that speak to the necessity of a valid indictment as a prerequisite to a federal court's exercise of jurisdiction. *See, e.g.*, *Ex parte Bain*, 121 U.S. 1, 13 (1887) (holding that a court has no jurisdiction over an offense not properly presented by an indictment), *overruled by United States v. Cotton*, 535 U.S. 625 (2002); *Ex parte Wilson*, 114 U.S. 417, 429 (1885) (holding that the district court exceeded its jurisdiction by holding a defendant to answer for a crime and sentencing him without an indictment); *United States v. Moore*, 37 F.3d 169, 173 (5th Cir. 1994) ("[T]he lack of an indictment in a federal felony case is a defect going to the jurisdiction of the court.") (internal quotation marks omitted). Relying on these cases, McIntosh contends that the district court lacked jurisdiction to sentence him in the absence of an indictment.

Contrary to McIntosh's position, a defective indictment does not deprive a court of jurisdiction. *Cotton*, 535 U.S. at 631 ("Insofar as it held that a defective indictment deprives a court of jurisdiction, [*Ex parte*] *Bain* is overruled."). The indictment at issue in *Cotton*, a drug-conspiracy case, was defective because it failed to allege the quantity of drugs required for the enhanced statutory penalties that the district court ultimately imposed (an error recognized in *Apprendi v. New Jersey*, 530 U.S. 466 (2000)). *Cotton*, 535 U.S. at 628, 632. Although the *Cotton* defendants failed to raise this argument in the district court, the United States Court of Appeals for the Fourth Circuit nonetheless vacated their sentences because it

8

held that the district court was "without jurisdiction to impose a sentence for an offense not charged in the indictment." *Id.* at 629 (ellipsis, emphasis, and internal quotation marks omitted).

The Supreme Court reversed, noting that *Bain*'s analysis of indictment defects in terms of jurisdiction was based on an "elastic concept of jurisdiction [that] is not what the term 'jurisdiction' means today." *Id*. at 630. Jurisdiction as it is understood today—meaning "the courts' statutory or constitutional *power* to adjudicate the case"—cannot be waived, but a criminal defendant may waive his or her right to an indictment under Rule 7(b) of the Federal Rules of Criminal Procedure. *Id.* (internal quotation marks omitted) (emphasis in original). Because the *Apprendi* defect in the *Cotton* indictment did not implicate jurisdiction, the Supreme Court held that the defendants' sentences, which the government conceded were the result of plain error, could be vacated only if the error "affected substantial rights" and "the fairness, integrity, or public reputation of judicial proceedings." *See id.* at 632-33 (brackets and internal quotation marks omitted).

McIntosh attempts to distinguish *Cotton* on two grounds: (1) unlike the *Cotton* defendants, he first raised his defective-indictment argument in the district court; and (2) the *Cotton* defendants challenged an indictment with an *Apprendi* error, whereas he challenges the complete lack of an indictment at the time of his sentencing. We believe that McIntosh's first distinction is irrelevant to the

9

Supreme Court's determination that indictment defects do not implicate a court's jurisdiction. The nonjurisdictional nature of the indictment's defect, in other words, would not change regardless of whether the *Cotton* defendants had first raised their *Apprendi* argument in the district court. All that would change would be the standard of review on appeal. *See McCoy v. United States*, 266 F.3d 1245, 1249 (11th Cir. 2001) (noting that the standard of review to be applied to *Apprendi*-based arguments depends on the timing of the objection).

The second distinction presents a more complicated issue because this court has explained that "indictment errors are not all the same" and should not be treated categorically. *See id.* at 1253. Some indictments are defective because they charge no federal crime at all, such as the indictment that charged conspiracies "to attempt" to import and to possess marijuana with the intent to distribute the drug in *United States v. Meacham*, 626 F.2d 503, 507 (5th Cir. 1980), offenses not set forth in the United States Code. In contrast, an indictment with an *Apprendi* defect "still charges a complete federal offense." *Id.*

The former defect deprived the district court of jurisdiction—not because the indictment was defective, but because Congress's grant of jurisdiction to the district courts in criminal cases extends only to "offenses against the laws of the United States." *See* 18 U.S.C. § 3231. If an indictment fails to charge such an offense, then a court has no basis for exercising jurisdiction. *See United States v.*

*Peter*, 310 F.3d 709, 713-14 (11th Cir. 2002) (explaining that *Cotton* did not upset the rule of *Meacham* that an indictment's failure to describe conduct proscribed by a federal statute is a jurisdictional defect); *contra United States v. Vaughn*, 694 F.3d 1141, 1147-49 (10th Cir. 2012) (rejecting *Peter*'s analysis and relying on *Cotton* to hold that the failure to state an offense in an indictment is not a jurisdictional defect).

The force of McIntosh's jurisdictional challenge turns on whether the district court's action in sentencing him without a pending indictment is akin to the defect at issue in *Meacham*, where the indictment *never stated* a federal offense. If the two situations were to be deemed sufficiently similar, then the district court was without jurisdiction to sentence McIntosh. But the difference between the present case and a *Meacham*-style defect is both clear and material: McIntosh was charged and convicted on an indictment that he concedes was valid. In *Meacham*, as in *Peter*, the defendants pleaded guilty to indictments alleging conduct that did not constitute federal criminal offenses. Because the conduct alleged in both cases "was outside the sweep of the charging statute," *Peter*, 310 F.3d at 714, jurisdiction was never properly established. But McIntosh, like the *Cotton* defendants, pleaded guilty to an indictment that alleged an established offense against the United States, thereby properly invoking the district court's jurisdiction under 18 U.S.C. § 3231.

11

McIntosh overlooks this key distinction in arguing that an indictment must be present in a case through sentencing for the district court to maintain jurisdiction.    His argument, however, cannot be squared with this court's understanding of *Cotton* as explained in *Peter*.  *See* 310 F.3d at 713-14 (noting that *Cotton* rejected the view that all indictment defects are jurisdictional).  The holding of *Cotton* makes clear that jurisdiction is not inherently tied to indictments.  *See* 535 U.S. at 631.  Rather, jurisdiction depends on stating "offenses against the laws of the United States."  18 U.S.C. § 3231.

An indictment's relationship to jurisdiction is thus based on whether it alleges conduct constituting a federal offense, not on some intrinsic value of an indictment as such.  This understanding of jurisdiction explains why a defendant can waive an indictment and consent to proceed by information; i.e., the court maintains jurisdiction so long as the information alleges a federal offense.  *See* Fed. R. Crim. P. 7(b).

With jurisdiction freed from any necessary tie to an indictment, we look in the present case for whether something other than the original indictment alleged or established an offense against the United States prior to the original indictment being dismissed.    This was clearly the situation here because McIntosh's conviction occurred before the dismissal of the indictment.    If an indictment—which is a grand jury's finding of *probable cause* that the alleged

12

criminal offense actually took place—is sufficient to state a federal offense and thereby invoke a court's jurisdiction, then all the more so must a conviction that *conclusively establishes* such an offense. McIntosh's conviction, moreover, was based on a *guilty plea* to a valid indictment that alleged a federal offense, and the conviction remained in effect despite the dismissal of the indictment. *McIntosh I*, 580 F.3d at 1228. The district court thus retained jurisdiction over the case through sentencing.

### D.    The Fifth Amendment does not require that an indictment be in existence at the time of sentencing

Having determined that the district court had jurisdiction to sentence McIntosh, we next turn to the question of whether that sentencing violated his constitutional rights under the Fifth Amendment's Grand Jury Clause. That clause provides that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury." U.S. Const. amend. V. McIntosh argues that the district court's sentencing order was contrary to the Clause's plain language because it "held [him] to answer" for a felony—an "infamous crime"—without an outstanding indictment. *See* Fed. R. Crim. P. 7(a) advisory committee's note ("An infamous crime has been defined as a crime punishable by . . . imprisonment in a penitentiary."). But we are unpersuaded by his contention that the act of sentencing following a valid

13

conviction constitutes being "held to answer" for purposes of the Clause's indictment requirement.

Although McIntosh does not spell out his argument in much detail, its basic premise is that the Grand Jury Clause uses the phrase "answer for" in the sense of "to suffer the consequences of." This is admittedly one definition of the term "answer for" found in the Oxford English Dictionary (http://www.oed.com/view/Entry/8146 (last visited Dec. 21, 2012)). Accepting this definition would produce a plausible interpretation of the Grand Jury Clause; i.e., that a person cannot be held to suffer the consequences of committing a felony without an indictment. Certainly a sentencing would qualify as a point at which a person is held to suffer such consequences.

But this is neither the only nor even the most plausible definition of "answer for" within the context of the Grand Jury Clause. "Answer" also means "to speak in reply or opposition to a charge," *id.*, a meaning recognized at the time of the Fifth Amendment's adoption and ratification. *See* Thomas Sheridan, *A Complete Dictionary of the English Language* (6th ed. 1796) (defining "answer" as "[t]hat which is said in return; confutation"); 1 Samuel Johnson, *A Dictionary of the English Language* (5th ed. 1773) ("A confutation of a charge.").

This latter sense of the phrase "answer for" is reflected in the Federal Rules of Criminal Procedure's requirements that an indictment is a necessary (unless

14

waived) prerequisite to the prosecution of cases and must be filed prior to an arraignment, the point at which a defendant is asked to reply to a charge by way of a plea.  *See* Fed. R. Crim. P. 7(a) (requiring prosecution by indictment); *id.* advisory committee's note (explaining that Rule 7(a) "gives effect to the [Grand Jury Clause]"); Fed. R. Crim. P. 10(a) (requiring that a defendant have a copy of the indictment or information before asking him or her to plead).  Simply put, the Grand Jury Clause requires that an indictment be in place before a person can be held to reply to a charge.  *See Ex parte Wilson*, 114 U.S. 417, 426 (1885) (holding that the Grand Jury Clause mandates that a person "shall not be put upon his trial" without the benefit of an indictment).

The remaining question is whether the Grand Jury Clause embraces *both* meanings of "answer for," such that an indictment must be in place both when a defendant pleads to a charge and when he or she "suffers the consequences of" that charge.  In the absence of any clear indication from the text alone regarding this issue, we turn to the underlying purposes of the right to an indictment.

This court has identified three unique functions served by an indictment: (1) to ensure that the defendant has adequate notice of the charges against him or her as the Sixth Amendment requires; (2) to "preserve[] the defendant's right to be accused by his fellow citizens" upon a finding of probable cause; and (3) to protect the defendant against double jeopardy.  *See United States v. Fern*, 155 F.3d 1318,

15

1324-25 (11th Cir. 1998); *United States v. Johnson*, 713 F.2d 633, 643 (11th Cir. 1983). McIntosh has not suggested any other functions that are served by an indictment.

He has also failed to show how any of these three functions are relevant at the sentencing phase of a criminal case. Indeed, McIntosh received all of the benefits of his original indictment—notice, a probable-cause finding by a grand jury, and protection from double jeopardy—prior to his sentencing. Once a valid conviction is obtained, the indictment as a stand-alone instrument no longer serves any of these functions.

A conviction, in fact, meets or exceeds each of the identified indictment functions: (1) it notifies the defendant of the nature of the charge for which he was accused (and convicted); (2) it signifies a legal conclusion, reached either by plea or by a jury's finding of guilt beyond a reasonable doubt, that the defendant committed the offense; and (3) it precludes a second prosecution or punishment for the same offense. The indictment no longer has a specific role in a case's post-conviction phase. In sum, interpreting the phrase "answer for" to include the sentencing phase of a criminal case is incongruous with the purposes of an indictment because those purposes are necessarily fulfilled at the point of a valid conviction.

16

We also note that our interpreting the phrase "answer for" in the Grand Jury Clause as focusing on the guilt-determination phase of a criminal prosecution rather than on the sentencing phase is consistent with the language used by the three states that included grand-jury clauses in their proposed amendments to the United States Constitution in 1788. *See* 4 Wayne R. LaFave et al., *Criminal Procedure* § 15.1(b) (3d ed. 2000) (describing the proposed grand-jury clauses of Massachusetts, New Hampshire, and New York). The Massachusetts and New Hampshire proposals would have mandated that no person be tried for a crime without first being indicted by a grand jury. *Id*. (citing 2 Bernard Schwartz, *The Bill of Rights: A Documentary History*, 677, 761 (1971)). New York's proposal provided that an "[i]ndictment by a [g]rand [j]ury ought to be observed as a necessary preliminary to the trial." Schwartz, *supra*, at 912.

The language ultimately adopted in the Fifth Amendment closely tracked the North Carolina Declaration of Rights, *see* LaFave et al., *supra*, at § 15.1(b), which similarly required an indictment before a "freeman shall be put to answer any criminal charge." Schwartz, *supra*, at 287. Blackstone's commentaries also used the "put to answer" phrasing to describe the requirement of an indictment before an arraignment. LaFave et al., *supra*, at § 15.1(b). None of these sources, all of which were contemporary to the adoption of the Fifth Amendment, suggests that the language of the Grand Jury Clause would extend the requirement of an

17

indictment to the sentencing phase of a criminal proceeding. *Cf. District of Columbia v. Heller*, 554 U.S. 570, 634-35 (2008) (noting that "[c]onstitutional rights are enshrined with the scope they were understood to have when the people adopted them").

In sum, the phrase "answer for" in the Grand Jury Clause, as properly understood in the context of the Clause's purposes, does not support the interpretation that McIntosh advocates. We therefore conclude that the district court's sentencing did not violate McIntosh's constitutional rights under the Fifth Amendment.

**E.    The sentencing did not violate either Rule 7(a) or Rule 12(b)(3)(B) of the Federal Rules of Criminal Procedure**

### *1.    Rule 7(a)*

McIntosh next contends that his being sentenced without an indictment violated Rule 7(a) of the Federal Rules of Criminal Procedure, which requires that capital and felony offenses be "prosecuted by an indictment." The Rule, however, simply gives effect to the Fifth Amendment's Grand Jury Clause. Fed. R. Crim. P. 7(a) advisory committee's note. So to the extent that McIntosh argues that his sentencing violated Rule 7(a) in exactly the same manner that it allegedly violated the Grand Jury Clause, the argument is foreclosed by the analysis in Part II.D. above.

18

McIntosh also argues, however, that the government was "prosecuting" him without an indictment at the sentencing phase of his case.  But he offers no authority to support the proposition that Rule 7(a)'s use of the term "prosecuted" extends any greater protection to federal defendants than that provided by the Grand Jury Clause.  Given the Rule's intended purpose of giving effect to that Clause, we decline to expand the scope of its indictment requirement based solely on the questionable assertion that the term "prosecuted" extends to the government's post-conviction motion to proceed to sentencing.  We therefore conclude that the district court's sentencing order did not violate Rule 7(a).

### 2.    *Rule 12(b)(3)(B)*

McIntosh also filed a motion to terminate the proceedings in his case under Rule 12(b)(3)(B) of the Federal Rules of Criminal Procedure, which concerns motions alleging defects in indictments.  The rule provides in relevant part as follows:

> (3) Motions That Must Be Made Before Trial. The following must be raised before trial:
> . . . .
>
> (B) a motion alleging a defect in the indictment or information—but at any time while the case is pending, the court may hear a claim that the indictment or information fails to invoke the court's jurisdiction or to state an offense; . . . .

19

Rule 12(b)(3) requires most motions that allege a defect in an indictment to be made before trial. But the Rule allows motions alleging the failure to invoke the court's jurisdiction or to state an offense to be brought at any time while the case is pending. The nature of the alleged defect therefore determines whether the challenge must be brought prior to trial.

Because McIntosh filed his Rule 12(b)(3)(B) motion after he was convicted, he must show that his indictment either failed to invoke the court's jurisdiction or failed to state a federal offense. He argues, quite simply, that a dismissed indictment fails in both respects. But this argument rests on the faulty premise that Rule 12(b)(3)(B) requires that an indictment be in place at all times while the case is pending.

McIntosh conflates the time at which a defendant may challenge these two types of indictment defects—that is, any time while the case is pending—with the time at which a valid indictment must be in place. We find this reading of the Rule to be inconsistent with the longstanding and, to our knowledge, uncontroverted understanding of an indictment's functions, all of which were fulfilled well before McIntosh's sentencing.

Although a Rule 12(b)(3)(B) claim regarding the lack of jurisdiction or the failure to state an offense may be brought at any time during the case, the defect in the indictment must have existed prior to the conviction because, as explained in

20

Part II.D. above, indictments serve no function after a valid judgment of conviction is entered. An indictment defect that exists only after a conviction is, at most, a technical defect because it has no bearing on the substantive fairness of the conviction or the process by which it was obtained.

A stark difference therefore exists between the type of defects that Rule 12(b)(3)(B) allows to be challenged at any time and the technical defect alleged by McIntosh. An indictment that fails to invoke a court's jurisdiction or to state an offense (and we have serious doubts after *Cotton* that an indictment can fail to invoke jurisdiction other than by failing to state an offense) necessarily undermines the validity of a conviction. The defendants in *United States v. Meacham*, 626 F.2d 503 (5th Cir. 1980), for example, pleaded guilty to an indictment that alleged conduct that was not a federal offense. Rule 12(b)(3)(B) would allow them to challenge their indictments after their guilty pleas because the failure to state an offense invalidated their convictions. One simply cannot be convicted by pleading guilty to conduct that is not a crime. *United States v. Peter*, 310 F.3d 709, 712-13 (11th Cir. 2002) (holding that the failure to state an offense is an error so fundamental that it cannot be waived by a guilty plea and warrants a writ of error coram nobis).

In contrast, there is no dispute that the original indictment against McIntosh stated an offense and that his conviction was valid. Furthermore, this court has

21

already held that the post-conviction dismissal of the indictment against him did not affect his conviction. *McIntosh I*, 580 F.3d at 1228. So McIntosh is seeking to use a procedural rule to create a substantive right that we have concluded does not exist—the right to a pending indictment at the sentencing phase of a case. We decline to read Rule 12(b)(3)(B) as creating such a right.

**E.     Sentencing in the absence of a pending indictment did not implicate the proper separation of powers**

McIntosh next contends that the district court's proceeding to sentence him in the absence of a pending indictment had "the practical import and effect of . . . alter[ing] the separation of powers doctrine." He argues that the court effectively usurped the executive branch's power to decide whether to abandon a prosecution. We certainly recognize that "courts are not to interfere with the free exercise of the discretionary powers of the attorneys of the United States in their control over criminal prosecutions." *United States v. Cox*, 342 F.2d 167, 171 (5th Cir. 1965). But we fail to see how granting the government's motion to set McIntosh's case for sentencing interfered with that discretionary executive power.

Once again, McIntosh's argument rests on a flawed premise: that the district court proceeded to sentencing after the government had "unequivocally abandoned" the prosecution. To the contrary, the government's motion to dismiss the original indictment without prejudice did not end the case because the court did

22

not vacate the conviction or set aside the guilty plea. *See McIntosh I*, 580 F.3d at 1228.    Nor did the government otherwise signal an abandonment of the prosecution; it sought only to correct a technical error in the indictment.  And at no point did the government suggest that it wished to abandon McIntosh's prosecution.  By moving to set McIntosh's case for sentencing, the government obviously intended just the opposite.

McIntosh also suggests a number of hypothetical scenarios that are meant to demonstrate the parade of horribles that would allegedly follow if we allow district courts to proceed to sentencing after the government has dismissed the relevant indictment.  For example, McIntosh posits that a prosecutor who makes a post-conviction discovery that the key witness in a case gave perjured testimony could move to dismiss the indictment, but the district court could unjustly proceed to sentence the defendant even after granting the prosecutor's motion.  Of course, in this example (like in each hypothetical that McIntosh suggests) the position of the prosecutor, unlike the government's position in the present case, is that the case should be terminated.    The obvious response to these scenarios is that the government retains the power to unequivocally terminate cases post-conviction by moving to vacate the convictions, in addition to dismissing the relevant indictment. Nothing in our ruling encroaches upon the executive's power to exercise its discretion to end prosecutions.

23

**F.    The district court did not abuse its discretion in denying McIntosh's motion to withdraw his guilty plea**

We next turn to McIntosh's motion to withdraw his guilty plea, which he filed prior to sentencing.  A defendant is allowed to withdraw a plea if he "can show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d).  The failure of an indictment to charge an offense is a fair and just reason to permit such a withdrawal.  *United States v. Bell*, 22 F.3d 274, 276 (11th Cir. 1994).  But we have already concluded that the post-conviction dismissal of McIntosh's original indictment is not the equivalent of a defective indictment that never stated an offense.  The key distinction is that McIntosh had the benefit of a valid indictment when he entered his guilty plea, and the subsequent dismissal of that indictment provides no cause to allow the withdrawal of his plea.  We thus conclude that the district court did not abuse its discretion in denying McIntosh's motion.

**G.    The district court had the power to sentence McIntosh based on his conviction**

McIntosh next argues that, to the degree that the district court had any authority to proceed to sentencing, the indictment circumscribed the scope of the sentence that could be imposed.  And since no indictment was pending at the time McIntosh was sentenced, the court allegedly had no power to impose any substantive sentence.  This argument is no more than a restatement of the

24

jurisdictional argument that we have already rejected.  Furthermore, sentences are based on convictions, not indictments, because only the former establishes that a defendant "has been found guilty of an offense" and thus "shall be sentenced." *See* 18 U.S.C. § 3551.

To be sure, an indictment must allege the essential elements of a crime, including any fact (other than the fact of a prior conviction) that could increase the penalty for a crime beyond the prescribed statutory maximum. *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000).  But this rule does not translate into a requirement that a court's sentence must be based on an indictment pending at the time of sentencing rather than on a conviction.  The connection between an indictment and a sentence is solely through the conviction; i.e., a court imposes a sentence based on the conviction, and the conviction reflects the allegations of the indictment.  In the present case, the court sentenced McIntosh based on his conviction, which in turn was based on a valid indictment that stated two separate federal offenses.  The district court was well within its power in imposing the sentence that it did.

**H.    McIntosh should have been sentenced with the benefit of the Fair Sentencing Act**

Finally, McIntosh protests the length of his sentence.  His sentence of 120 months of incarceration reflected the statutory mandatory minimums for his offenses as they existed prior to the Fair Sentencing Act of 2010, Pub. L. No. 111-

220, § 2(a), 124 Stat. 2372 (the FSA). The FSA raised the relevant threshold possession amounts for crack cocaine, such that the approximately 20 grams of crack cocaine that McIntosh possessed with the intent to distribute would now not trigger a mandatory minimum sentence. *Compare* 21 U.S.C. § 841 (2009) (providing a five-gram threshold for triggering a five-year mandatory minimum sentence), *with* 21 U.S.C. § 841 (2011) (providing a 28-gram threshold for the same five-year mandatory minimum sentence).

Because McIntosh committed his offenses before the FSA's effective date on August 3, 2010, the district court determined that the pre-FSA version of § 841 applied, even though the sentencing took place after the FSA's effective date. This was initially the government's position on appeal as well. But the government abandoned that position in a July 27, 2011 letter to this court, explaining that the Attorney General had recently announced a change in the Department of Justice's position on this sentencing issue. Consistent with this court's opinion in *United States v. Rojas*, 645 F.3d 1234 (11th Cir. 2011), the Attorney General determined that the FSA's revised penalties apply to defendants sentenced after the FSA's effective date, even if their offenses occurred prior to that date. *See also Dorsey v. United States*, 132 S. Ct. 2321, 2335 (2012) (holding that the FSA's more lenient penalties "apply to the post-Act sentencing of pre-Act offenders").

26

We therefore agree with both McIntosh and the government that McIntosh should be resentenced in accordance with the FSA's revised penalty provisions. The case will be remanded for this purpose.

### III.  CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the district court's orders denying McIntosh's motions to terminate the proceedings and withdraw his guilty plea, but we **VACATE** the sentence and **REMAND** the case for resentencing consistent with this opinion.

CARNES, Circuit Judge, concurring:

I concur in the Court's decision that in light of Dorsey v. United States, 132 S.Ct. 2321, 2335 (2012), McIntosh is entitled to be resentenced under the Fair Sentencing Act of 2010, Pub. L. No. 111-220, 124 Stat. 2372, and I join that part of its opinion.

I also concur in the decision that McIntosh's conviction is due to be affirmed, although I arrive at that destination by a different route than the one the Court takes. In the first appeal of this case, we concluded that the district court erred when it denied McIntosh's motion to dismiss the second indictment on Double Jeopardy grounds. United States v. McIntosh, 580 F.3d 1222 (11th Cir. 2009). A necessary and explicitly stated premise of that conclusion was that even though the indictment had been dismissed, the first conviction had not been vacated and dismissed; it still existed. Id. at 1228. We explained that "McIntosh has not yet been sentenced based on his plea of guilt in the first case, but his conviction still exists and awaits a sentence." Id. That is the reason we gave for our decision that McIntosh's conviction for the same crime under the second indictment violated the Double Jeopardy Clause. See id. at 1229 ("McIntosh's initial conviction was never vacated, and the Double Jeopardy Clause prohibited a second prosecution of McIntosh for the same offenses.")

28

Our holding in the first appeal that McIntosh remained convicted under, and still could be sentenced based on, the first indictment is inconsistent with all of McIntosh's contentions in this appeal. This appeal of the judgment that the district court entered on remand arises from the district court doing exactly what we instructed it to do: sentence McIntosh based on the first indictment even though that indictment had been dismissed. Because our opinion in the first appeal was published, we are bound by the prior panel precedent rule to follow the holdings of that decision. See Schiavo ex rel. Schindler v. Schiavo, 403 F.3d 1289, 1292 (11th Cir. 2005) ("Because our previous decision was published, the prior panel precedent rule also applies to any holdings reached in the earlier appeal.").

We are also bound by the law of the case doctrine to follow our holdings in the first appeal. See Norelus v. Denny's, Inc., 628 F.3d 1270, 1288 (11th Cir. 2010); Burger King Corp. v. Pilgrim's Pride Corp., 15 F.3d 166, 169 (11th Cir. 1994) ("As we have repeatedly recognized, findings of fact and conclusions of law by an appellate court are generally binding in all subsequent proceedings in the same case in the trial or on a later appeal.") (internal quotation marks omitted); id. ("[B]inding precedent makes clear that the law of the case encompasses all things decided by necessary implication as well as those decided explicitly.") (internal quotation marks and emphasis omitted); AIG Baker Sterling Heights, LLC v. American Multi-Cinema, Inc., 579 F.3d 1268, 1270–71 (11th Cir. 2009) (same).

29

"The exceptions to the law of the case doctrine are (1) the presentation of new evidence, or (2) an intervening change in controlling law, or (3) that the appellate decision is clearly erroneous and would result in manifest injustice if implemented." United States v. Williams, 563 F.3d 1239, 1242 (11th Cir. 2009). None of those exceptions applies here.  No evidence was presented on remand. There has been no change in controlling law.  Our decision in the first appeal was not clearly erroneous, as the discussion of the Double Jeopardy issue in the Court's opinion in this appeal (which is not grounded in the prior precedent rule or the law of the case doctrine) demonstrates.  And McIntosh was sentenced for drug and firearm crimes that he admits he committed.  There is no injustice in that, manifest or otherwise.[1]

---

[1]    An interesting legal issue would arise if the clear error and manifest injustice exception to the law of the case doctrine were applicable in this case.  If that exception applied, it might clash with the prior precedent rule, which has no exception for clear error.  See Smith v. GTE Corp., 236 F.3d 1292, 1303 (11th Cir. 2001) ("The idea of an exception to the prior panel precedent rule where a subsequent panel is convinced the prior one reached the wrong result—for whatever reason—is also inconsistent with a number of decisions in which panels of this Court have obediently followed prior panel precedents they were convinced were wrong."); Cohen v. Office Depot, Inc., 204 F.3d 1069, 1076 (11th Cir.2000) ("Even if we thought Lindsey wrong, the prior panel precedent rule is not dependent upon a subsequent panel's appraisal of the initial decision's correctness.  Nor is the operation of the rule dependent upon the skill of the attorneys or wisdom of the judges involved with the prior decision—upon what was argued or considered.  Unless and until the holding of a prior decision is overruled by the Supreme Court or by the en banc court, that holding is the law of this Circuit regardless of what might have happened had other arguments been made to the panel that decided the issue first.").  Would the clear error and manifest injustice exception to the law of the case doctrine trump the prior panel precedent rule, or does that exception extend no further than the law of the case doctrine of which it is a part, leaving the prior precedent master of all to which its terms apply?  As fascinating as that question is, we need not answer it in this case because no exception to the law

of the case doctrine does apply.