In the

# United States Court of Appeals

## For the Seventh Circuit

No. 18-3690

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

IONEL MURESANU,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 18-CR-129-JPS — **J.P. Stadtmueller**, *Judge.*

ARGUED SEPTEMBER 6, 2019 — DECIDED MARCH 3, 2020

Before FLAUM, SYKES, and ST. EVE, *Circuit Judges.*

SYKES, *Circuit Judge.* Ionel Muresanu was arrested in Wisconsin for his role in a multistate ATM skimming operation. A grand jury charged him with four crimes: possession of counterfeit access devices and three counts of aggravated identity theft. The identity-theft charges were legally defective. The indictment alleged that Muresanu *attempted* to commit aggravated identity theft, but there is no such

federal crime; the statutory definition of aggravated identity theft doesn't cover attempts.

Muresanu's attorney did not object to the defective indictment in a pretrial motion under Rule 12(b)(3) of the Federal Rules of Criminal Procedure. Instead, he strategically waited until trial and moved for acquittal on the identity-theft counts after the government rested its case. The district judge denied the motion, ruling that Muresanu waived the objection by failing to raise the matter in a Rule 12(b)(3) motion.

The judge then deleted the attempt language from the jury instructions and instructed the jury on the elements of the completed crime. The modified instruction conformed to the statutory offense but varied from the charges in the indictment. The evidence overwhelmingly supported conviction on the reformulated charges, and the jury found Muresanu guilty on all counts. The judge imposed a prison sentence of 34 months on count one and the mandatory 24-month sentence on each of the three identity-theft counts, consecutive to count one but concurrent to the other identity-theft counts.

Muresanu raises two challenges to the identity-theft convictions. First, he argues that the defect in the indictment—its failure to charge an actual federal offense—deprived the court of jurisdiction over these counts. Second, he argues that the judge's "cure" for the defect—instructing the jury on the completed crime rather than an attempt—violated his Fifth Amendment right to be tried only on charges contained in the grand jury's indictment. He also challenges his sentence on count one for possession of counterfeit access devices.

We affirm in part and reverse in part. The judge correctly applied the Sentencing Guidelines to count one, so that challenge fails. Counts two through four are another matter. Defects in the indictment are not jurisdictional, *United States v. Cotton*, 535 U.S. 625, 631 (2002), and under Rule 12(b)(3) they must be raised by pretrial motion, as the judge correctly recognized. But the modification of the jury instructions led the jury to convict Muresanu of crimes not charged by the grand jury, violating his Fifth Amendment right to be tried only on charges brought by indictment. That category of error is per se reversible. *Stirone v. United States*, 361 U.S. 212, 217 (1960). We have no choice but to vacate the judgment on counts two through four and remand for resentencing on count one alone.

## I. Background

In 2017 Muresanu began participating in an ATM skimming scheme run by a man known to him only as Vidu. Muresanu was then 17 years old and had recently arrived in this country from his native Romania. The skimming scheme generally operated in this way: Vidu provided Muresanu and other participants with skimming devices and pinhole cameras to place in and on ATMs. The skimmers recorded the account information of the ATM cards inserted into the machines; the cameras recorded user PINs. For months Muresanu and others—including his 16-year-old cousin Florin—placed and removed these devices on ATMs in Nashville, Atlanta, Kansas City, Louisville, and St. Louis, collecting card-stripe information and PINs. Muresanu passed this information to Vidu, who used it to create counterfeit debit cards and drain money from the original cardholders' bank accounts. Vidu gave Muresanu 25% of the

proceeds from each batch of counterfeit ATM cards. Muresanu, in turn, paid his younger cousin Florin from his share of the proceeds.

Muresanu's participation came to a halt in May 2018 when he was arrested in Oshkosh, Wisconsin. By then he had turned 18. On May 18 Oshkosh police were alerted to suspicious activity by people in a white van with Tennessee plates. Detective April Hinke located the van and followed it from a motel to a convenience store. There Hinke and other officers observed Muresanu and two minors—his cousin Florin and a teenager named Surdo—use one debit card after another at the store's ATM. The officers arrested the three young thieves and recovered 100 counterfeit ATM cards in their possession. Muresanu was given *Miranda* warnings and agreed to talk to the officers. He gave them detailed written and recorded statements confessing his involvement in the skimming scheme.

A grand jury returned a four-count indictment charging Muresanu with possessing 15 or more counterfeit access devices in violation of 18 U.S.C. § 1029(a)(3) and three counts of aggravated identity theft in violation of 18 U.S.C. § 1028A(a)(1). Although the statutory definition of aggravated identity theft does not cover attempts, counts two through four of the indictment alleged that Muresanu "did knowingly *attempt* to transfer, possess, and use, without lawful authority, a means of identification … , knowing that said means of identification belonged to another person." (Emphasis added.)

The judge set a deadline for pretrial motions, but the date came and went without a defense motion under Rule 12(b)(3) objecting to the defective indictment. As the

trial date approached, the judge distributed a copy of the jury instructions he planned to use at trial. As relevant here, the proposed instructions tracked the indictment: regarding counts two through four, the instructions described the charged offense as *attempted* aggravated identity theft and included an instruction on attempt.

Muresanu's attorney contested little of the government's case at trial. He made no opening statement and declined to cross-examine five of the government's nine witnesses. His cross-examination of the remaining witnesses was light and brief. When the government rested its case, Muresanu's attorney moved for judgment of acquittal on counts two through four; at that point the defense strategy became clear. Counsel explained that because *attempted* identity theft, as charged in the indictment, is not a federal crime, no rational jury could return a verdict of guilty on those counts. The judge denied the motion, ruling that the defect in the indictment should have been raised by pretrial motion as Rule 12(b)(3) requires.

That left a dilemma about how to submit the case to the jury. The government argued that the "attempt" language in the indictment was surplusage and asked the judge to strike it. Muresanu objected, and the judge declined to adopt the government's suggested fix. Instead, the judge modified the jury instructions to remove all references to "attempt." Muresanu objected to this remedy as well, but the judge overruled the objection. The final jury instructions thus reframed the offenses charged in counts two through four as *completed* acts of aggravated identity theft—not *attempts*, as charged in the indictment. The jury found Muresanu guilty on all four counts.

Muresanu filed posttrial motions seeking various forms of relief on counts two through four: judgment of acquittal under Rule 29, an arrest of judgment under Rule 34, or a new trial under Rule 33. FED. R. CRIM. P. 29, 33, 34. He argued that the judge impermissibly amended the indictment by reformulating counts two through four as completed acts of aggravated identity theft and instructing the jury on the elements of that crime. The judge denied relief, again noting that Muresanu waived the defect in the indictment by failing to raise it by pretrial motion under Rule 12(b)(3). The judge also reasoned that the modified jury instructions altered only the form of the indictment, not its substance, and Muresanu suffered no prejudice.

At sentencing Muresanu challenged several aspects of the proposed offense-level calculation for count one, the conviction for possession of counterfeit access devices. The presentence report recommended a two-level enhancement for use of sophisticated means, U.S.S.G. § 2B1.1(b)(10)(C); a two-level enhancement for Muresanu's supervisory role in the offense, *id.* § 3B1.1; and a two-level enhancement for using a minor to assist in the crime, *id.* § 3B1.4. Muresanu objected to all three enhancements. He also argued that he was only a minor participant in the offense, justifying a two-level downward adjustment under § 3B1.2. The judge overruled the objections, denied the minor-role reduction, and adopted the proposed Guidelines calculation.

That calculation yielded an advisory sentencing range of 51–63 months on count one. The identity-theft counts carried an automatic 24-month sentence consecutive to count one as required by § 1028A(a)(1) and (b)(2). The judge settled on a below-Guidelines sentence of 34 months on count one,

followed by the statutory consecutive sentence of 24 months on each of the identity-theft counts. Exercising the discretion conferred by § 1028A(b)(4), the judge ordered the three 24-month terms on the identity-theft counts to run concurrently for a total sentence of 58 months.

## II. Discussion

Muresanu raises three points on appeal. First, he argues that the defect in the indictment—accusing him of *attempted* aggravated identity theft, a "noncrime"—deprived the court of subject-matter jurisdiction over counts two through four. Alternatively, he contends that the judge's alteration of the jury instructions led the jury to convict him of offenses not charged in the indictment, violating his Fifth Amendment right to be tried only on charges issued by a grand jury. Finally, he challenges his sentence on count one, reprising his objection to the three Guidelines enhancements mentioned above.

### A. Jurisdiction

We review jurisdictional questions de novo. *See United States v. Rollins*, 301 F.3d 511, 517 (7th Cir. 2002). The federal criminal code does not contain a general attempt statute; attempts to commit a crime are punishable only if the statutory definition of the crime itself proscribes attempts. *United States v. Rovetuso*, 768 F.2d 809, 821 (7th Cir. 1985). Many federal criminal statutes expressly cover attempts, but the one at issue here does not. Section 1028A(a)(1) mandates a 24-month consecutive prison sentence for anyone who "during and in relation to [a specified felony offense], knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person." 18 U.S.C.

§ 1028A(a)(1). Attempts to commit the crime are not included.

Nonetheless, counts two through four of the indictment inexplicably alleged that Muresanu *attempted* to commit acts constituting aggravated identity theft. He argued below and reiterates here that this type of defect in an indictment—the failure to allege an actual federal offense—is jurisdictional.

The Supreme Court's decision in *Cotton* controls this question. The defect at issue in *Cotton* arose under *Apprendi*. A grand jury indicted the defendants for conspiracy to distribute a "detectable amount" of cocaine and cocaine base, but the indictment did not contain specific drug-quantity allegations. *Cotton*, 535 U.S. at 627–28. A jury found the defendants guilty, and at sentencing the judge made drug-quantity findings and imposed enhanced penalties under the statutory scheme specifying longer prison terms for offenses involving larger drug quantities. *Id.* at 628. While the defendants' appeal was pending, the Court ruled in *Apprendi v. New Jersey*, 530 U.S. 466, 476 (2000), that any fact that increases the statutory penalty must be charged in the indictment, submitted to the jury, and proved beyond a reasonable doubt.

Although the defendants had not preserved an *Apprendi*-like argument in the district court, the court of appeals held that the defect in the indictment—its failure to allege drug quantities as required by *Apprendi*—was jurisdictional and thus could not be waived. *Cotton*, 535 U.S. at 629. The Supreme Court reversed, holding that "a defective indictment" does not "deprive[] a court of jurisdiction." *Id.* at 631 (overruling *Ex parte Bain*, 121 U.S. 1 (1887)).

The circuits are split on the proper interpretation of *Cotton*. The Eleventh Circuit reads the Court's holding as limited to defective indictments that omit necessary allegations but nonetheless charge *some* federal crime. *United States v. McIntosh*, 704 F.3d 894, 901–03 (11th Cir. 2013). On this view, the rule announced in *Cotton* does not apply if an indictment fails to allege any federal crime at all. *Id.* The Fifth and Tenth Circuits read *Cotton* more broadly, applying it even when an indictment fails to state an offense; on this view, defects in an indictment—of whatever kind—are not jurisdictional. *United States v. De Vaughn*, 694 F.3d 1141, 1148–49 (10th Cir. 2012); *United States v. Cothran*, 302 F.3d 279, 283 (5th Cir. 2002).

We think the Fifth and Tenth Circuits have the better reading. *Cotton* used general language, broadly holding that "defects in an indictment do not deprive a court of its power to adjudicate a case." 535 U.S. at 630. The Eleventh Circuit's narrow interpretation is hard to reconcile with this expansive language. It also doesn't fit well with the Court's reasoning. *Cotton* relied in part on *Lamar v. United States*, 240 U.S. 60 (1916). In that case the defendant was charged with impersonating an officer of the United States with intent to defraud; the indictment alleged that he falsely held himself out to be a congressman. *Id.* at 64. The defendant argued that because a congressman is not an officer of the United States, the indictment did not charge an actual federal offense, and this defect deprived the court of jurisdiction. *Id.* The Court disagreed, ruling that subject-matter jurisdiction was unaffected by the defect in the indictment. Rather, "[an] objection that the indictment does not charge a crime against the United States goes only to the merits of the case." *Id.* at 65.

*Cotton* also relied on *United States v. Williams*, 341 U.S. 58 (1951), another case that similarly dealt with a contention that the conduct alleged in an indictment was not covered by the relevant criminal statute. The *Williams* defendants were police officers convicted of perjury for giving false testimony at their criminal trial on charges of conspiring to oppress persons in their custody in the exercise of rights secured to them by the Fourteenth Amendment, violating 18 U.S.C. § 241. *Id.* at 58–59. On direct appeal from the judgment in the underlying conspiracy prosecution, the court of appeals reversed the convictions and quashed the indictment, ruling that § 241 "d[oes] not apply to the general rights extended to all persons by the Fourteenth Amendment." *Id.* at 58. The defendants then challenged their perjury convictions, arguing that the defect in the § 241 indictment meant that the court in the earlier case lacked jurisdiction; and this, in turn, meant that they could not be convicted of perjuring themselves at the conspiracy trial. The Court rejected this argument, reaffirming that even when the indictment fails to state an offense, the court is not deprived of jurisdiction: "Though the trial court or an appellate court may conclude that … the facts stated in the indictment do not constitute a crime … , it has proceeded with jurisdiction[,] and false testimony before it under oath is perjury." *Id.* at 68–69.

*Lamar* and *Williams* support the Fifth and Tenth Circuits' broader understanding of the rule announced in *Cotton*: defects in an indictment do not deprive the court of subject-matter jurisdiction, and this is so even when the defect is a failure to state a federal offense. *See De Vaughn*, 694 F.3d at 1148–49. Because indictment defects go to the merits of the case—not the court's power to hear it—an objection to a defective indictment may be waived.

Under Rule 12(b)(3)(B) an objection to "a defect in the indictment" must be made "by pretrial motion." The rule contains an illustrative list of defects that are subject to this requirement; the list expressly includes "failure to state an offense." FED. R. CRIM. P. 12(b)(3)(B)(v). So the district judge correctly held that Muresanu waived his objection to the defective indictment by failing to raise the matter in a Rule 12(b)(3) motion.

## B. Fifth Amendment Grand Jury Right

The Fifth Amendment guarantees the right of an accused to be tried only on charges in an indictment returned by a grand jury. *Stirone*, 361 U.S. at 215. Altering an indictment without the approval of the grand jury "is per se reversible error." *United States v. Galiffa*, 734 F.2d 306, 311 (7th Cir. 1984) (emphasis omitted); *see also Stirone*, 361 U.S. at 217 ("Deprivation of such a basic right is far too serious to be treated as nothing more than a variance and then dismissed as harmless error.").

Muresanu argues that the judge's "cure" for the defective indictment—removing the "attempt" language from the jury instructions on counts two through four—led the jury to convict him of crimes not charged by the grand jury and therefore violated his right to be tried only on charges contained in the indictment. The government responds that the judge's modification of the jury instructions amounted to a permissible variance of the indictment. Permissible variances come in two varieties. The first are variations "that are merely a matter of form," such as correcting a "typographical or clerical error or a misnomer." *United States v. Leichtnam*, 948 F.2d 370, 376 (7th Cir. 1991). The second are

variations that narrow the indictment to either fewer offenses or to lesser-included offenses. *Id.*

The modification at issue here neither corrected an error of form nor narrowed the indictment. The judge altered the substance of the indictment by changing the offense charged in counts two through four from an *attempt* to a *completed crime* of aggravated identity theft—hardly a narrowing of the indictment. It was instead an impermissible variance.

The government falls back on waiver, attacking Muresanu's defense strategy of bypassing a Rule 12(b)(3) motion and waiting to raise the defective indictment at trial after jeopardy attached and the prosecution had rested its case. We've just explained why this litigation strategy waived a challenge to the defective indictment. It did not, however, waive Muresanu's right to object to the modified jury instructions that led the jury to convict him of crimes not charged in the indictment. He did in fact object, so the Fifth Amendment error is preserved. And under *Stirone* prejudice is presumed. 361 U.S. at 215.

We recognize that rewarding Muresanu's strategy of omitting a pretrial motion is contrary to the important policy considerations underlying Rule 12. The requirement that a defendant litigate indictment defects by pretrial motion "permits the United States to appeal from an order that, because of the Double Jeopardy Clause, cannot be appealed after trial." *United States v. Nixon*, 901 F.3d 918, 921 (7th Cir. 2018). Moreover, it "permits the parties to brief the issue with care, rather than address [the] … issue on the fly" when it is raised midtrial. *Id.* And "[i]t prevents game playing." *Id.*

Muresanu's defense strategy thwarted these purposes, allowing him to "enjoy a trial that [he could] win but not lose." *Id.* Still, under *Stirone* the constitutional error is categorically prejudicial, and the required remedy is to vacate the judgment on counts two through four.

## C. Sentencing Enhancements on Count One

That leaves count one. Muresanu's conviction for possession of counterfeit access devices is unaltered by the constitutional error infecting the convictions for aggravated identity theft. Muresanu reiterates his challenge to the application of three offense-level enhancements under the Sentencing Guidelines: one for using a sophisticated means to commit the crime, another for his supervisory role in the offense, and a third for using a minor in the scheme. We review for clear error. *United States v. Wayland*, 549 F.3d 526, 528 (7th Cir. 2008).

A two-level enhancement applies if the offense involved "sophisticated means." U.S.S.G. § 2B1.1(b)(10)(C). Application of this enhancement has ample support in the trial evidence. The scheme involved sophisticated equipment—ATM skimmers and pinhole cameras—and installing these devices without being detected took some skill. Moreover, to disguise his identity, Muresanu changed his clothes and hairstyle as he moved from location to location. And when Muresanu received counterfeit bank cards from Vidu, he waited a period of time before using those cards so the victims would have a harder time identifying the ATMs Muresanu had compromised. The judge properly applied this enhancement.

Muresanu insists that the sophisticated-means enhance-
ment cannot apply because he was not the architect of the
scheme. This argument raises a legal question. The
sophisticated-means enhancement is appropriate when "the
defendant intentionally engaged in or caused the conduct
constituting sophisticated means." *Id.* § 2B1.1(b)(10)(C).
Nothing in this language limits application of the enhance-
ment to only the mastermind of the scheme. Rather, the
enhancement applies when the defendant "engaged in" or
"caused" the relevant conduct—here, ATM skimming—
using sophisticated means.

Muresanu also challenges the judge's application of an
offense-level enhancement under § 3B1.1 to account for his
aggravated role in the offense and the related rejection of his
request for a minor-role reduction under § 3B1.2. A two-level
enhancement applies if the defendant was an "organizer,
leader, manager, or supervisor of one or more other partici-
pants." *Id.* § 3B1.1 n.2. "Orchestrating or coordinating activi-
ties performed by others makes a particular defendant a
manager or supervisor." *United States v. Martinez*, 520 F.3d
749, 752 (7th Cir. 2008).

The uncontested evidence established that Muresanu su-
pervised his minor cousin Florin in this months-long skim-
ming scheme, paying him from the share of the proceeds he
received from Vidu. The judge properly relied on this evi-
dence to support the supervisory-role enhancement, and
correspondingly, to reject Muresanu's request for a minor-
role reduction.

Finally, Muresanu challenges the application of the en-
hancement for using a minor to commit a crime. *See* U.S.S.G.
§ 3B1.4. Muresanu argues that the enhancement applies only

to *adults* who used a minor; he was himself a minor for part of the scheme. We do not need to decide if this interpretation of § 3B1.4 is correct. Muresanu was 18 when he was arrested and at the time was continuing to supervise Florin in the commission of the offense. The judge correctly applied this enhancement.

AFFIRMED in part, VACATED in part, and REMANDED.