[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 08-15449

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
Aug. 27, 2009
THOMAS K. KAHN
CLERK

D. C. Docket No. 08-00040-CR-2-RDP-PWG

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JAMES LERAY MCINTOSH,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(August 27, 2009)

Before CARNES and PRYOR, Circuit Judges, and DOWD,[*] District Judge.

PRYOR, Circuit Judge:

_____

[*] Honorable David D. Dowd Jr., United States District Judge for the Northern District of
Ohio, sitting by designation.

This appeal presents the question whether a defendant whose conviction has not been vacated may be indicted again for the same offenses without violating the Double Jeopardy Clause because the government obtained a dismissal of the original indictment after the defendant pleaded guilty to it. James LeRay McIntosh pleaded guilty to an indictment that alleged drug and firearm charges, and the district court unconditionally accepted his plea. Before sentencing, the government discovered that the indictment alleged the wrong date of the offenses, obtained from another grand jury a second indictment with the correct date of the offenses, and filed a motion to dismiss the first indictment, which the district court granted. McIntosh then moved to dismiss the second indictment as barred by the Double Jeopardy Clause, but the district court denied the motion. McIntosh then conditionally pleaded guilty. We conclude that, when McIntosh pleaded guilty to the first indictment, jeopardy attached, and the later indictment of McIntosh for the same offenses violated the Double Jeopardy Clause. The district court erred when it denied McIntosh's motion to dismiss the second indictment. We vacate McIntosh's judgment of conviction and remand with instructions to dismiss the second indictment.

## I. BACKGROUND

On September 27, 2007, a grand jury indicted McIntosh on one count of

possession with intent to distribute five kilograms of crack cocaine, 21 U.S.C. §§ 841(a)(1), (b)(1)(B)–(C), and one count of carrying a firearm during and in relation to a drug trafficking offense, 18 U.S.C. § 924(c)(1)(A)(i). The charges stemmed from the discovery of drugs and a firearm in McIntosh's vehicle after he was arrested on outstanding warrants during a traffic stop. The indictment alleged that McIntosh committed the offenses "[o]n or about the 21st day of February, 2007."

On November 28, 2007, McIntosh pleaded guilty to both counts of the indictment without a written plea agreement. At the plea hearing, McIntosh stated that he had received a copy of the indictment and had been given adequate time to review the indictment and consult with his attorney. The district court then explained the charges, the elements for each offense, the possible penalties, and the consequences of pleading guilty. The district court did not mention the date on which the offenses occurred.

The district court then asked the prosecutor to describe, on the record, some of the evidence the government would have introduced at trial, and the Assistant United States Attorney recited the factual basis for the plea and described the chain of events that led to the charges. The prosecutor began, "The government would expect the evidence to show that on November 12th, 2005, Jefferson County sheriff's officer deputy Barton conducted a traffic stop of the defendant James

3

LeRay McIntosh, Jr." The prosecutor continued to describe the basis for the stop, the arrest of McIntosh on outstanding warrants, and the discovery of drugs, drug paraphernalia, and a firearm in the vehicle.

The district court inquired of McIntosh's counsel whether the facts recited by the prosecutor were "substantially correct," and counsel stated that he "agree[d] that Mr. McIntosh was in possession of five or more grams of cocaine, and was also in the possession of a pistol or firearm in relation to the drug trafficking crime." McIntosh's counsel "reserved a right to object and demand proof" of the remaining recited facts at sentencing "to the extent that it could have an impact in sentencing." McIntosh then admitted that he committed the offenses and knowingly broke the law. McIntosh pleaded guilty, and the district court accepted his plea and stated that it would set the sentencing hearing for 90 days later.

On December 17, 2007, the government informed the district court and McIntosh's counsel that the indictment alleged the wrong date for the charged offenses. The indictment identified the date of the offenses as February 21, 2007, but as stipulated during the plea hearing, the offenses actually occurred on November 12, 2005. During a conference in chambers the next day, the prosecutor explained the error and apologized for it. The court reporter was not present at the conference, but the parties recounted what transpired at a later evidentiary hearing.

4

The district court recalled that it "took some responsibility" for failing to notice the mistake and told the parties that it would not have accepted the plea then had it known about the mistake because "if [the court] didn't believe there was a factual basis to support a plea to that indictment, [it] would not have accepted the plea at that time." The parties and the court then "discussed various remedies," but "did not reach any type of decision," and the court and McIntosh's counsel "left it to the government to go examine its options and make a choice." McIntosh's counsel "tried to make it very clear that [he] was not in a position to agree to any remedy that the government might fashion."

On January 29, 2008, another grand jury returned an indictment against McIntosh that was identical to the original indictment except that the new indictment alleged the correct date of the offenses. The next day, the government moved to dismiss the original indictment without prejudice. McIntosh did not object to the motion, but the district court and the parties agreed that McIntosh's failure to object "didn't mean he was acquiescing in a subsequent indictment, and he was kind of keeping all his options open." The district court granted the motion to dismiss the original indictment, but did not vacate McIntosh's conviction or set aside his guilty plea.

On March 3, 2008, McIntosh filed a motion to dismiss the second indictment

5

on the ground that the Double Jeopardy Clause barred the government from prosecuting him for the same charges that were the subject of the first indictment. After a hearing, the district court stated, without any citation for support, that "jeopardy did not attach when Defendant McIntosh gave his guilty plea to the defective indictment" and denied the motion. The court then issued a written opinion that, assuming jeopardy had attached, McIntosh's "plea was effectively withdrawn and therefore [McIntosh] continues to face the same jeopardy as in the first action." The court stated, "Even if jeopardy attached, there is no possibility that Defendant McIntosh would be subjected to a second conviction because there was no first conviction given that the first indictment was dismissed. Likewise, there is no possibility of a second punishment because no punishment has yet been imposed on Defendant."

McIntosh entered a conditional plea of guilty to the charges in the second indictment and reserved the right to challenge the denial of his motion to dismiss the second indictment. The district court accepted the conditional plea and sentenced McIntosh to 120 months of imprisonment and 60 months of supervised release. McIntosh filed two identical notices of appeal that challenged his conviction and sentence: one notice listed the case number of the original indictment, and the other notice listed the case number of the second indictment.

6

This Court dismissed for lack of jurisdiction McIntosh's appeal in the first case because "the final judgment that McIntosh [sought] to appeal [was] non-existent." Bogle v. Orange County Bd. of County Comm'rs, 162 F.3d 653, 661 (11th Cir. 1998); see 28 U.S.C. § 1291 ("The courts of appeals . . . shall have jurisdiction of appeals from all final decisions of the district courts of the United States . . . ."); Berman v. United States, 302 U.S. 211, 212, 58 S. Ct. 164, 166 (1937) ("Final judgment in a criminal case means sentence."). We now turn to the merits of McIntosh's appeal of his conviction and sentence under the second indictment.

## II. STANDARD OF REVIEW

We "review[] de novo, as a pure question of law, any possible violation of the Double Jeopardy Clause." United States v. Thurston, 362 F.3d 1319, 1322 (11th Cir. 2004).

## III. DISCUSSION

The Double Jeopardy Clause "provides that no person shall 'be subject for the same offence to be twice put in jeopardy of life or limb.'" Brown v. Ohio, 432 U.S. 161, 164, 97 S. Ct. 2221, 2225 (1977). "What lies at the heart of the Double Jeopardy Clause is the prohibition against multiple prosecutions for the same offense." Jeffers v. United States, 432 U.S. 137, 150, 97 S. Ct. 2207, 2216 (1977) (internal quotation marks omitted); Brown, 432 U.S. at 165, 97 S. Ct. at 2225

7

("The Double Jeopardy Clause 'protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense.'" (quoting North Carolina v. Pearce, 395 U.S. 711, 717, 89 S. Ct. 2072, 2076 (1969)). The clause is based on the fundamental notion that serial prosecutions by the government are abusive:

> Underlying this constitutional safeguard is the belief that "the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty."

United States v. Dinitz, 424 U.S. 600, 606, 96 S. Ct. 1075, 1079 (1976) (quoting Green v. United States, 355 U.S. 184, 187–88, 78 S. Ct. 221, 223 (1957)).

Although jeopardy attaches when a jury is empaneled and sworn or the court begins to hear evidence in a bench trial, Serfass v. United States, 420 U.S. 377, 388, 95 S. Ct. 1055, 1062 (1975); United States v. Baggett, 901 F.2d 1546, 1548 (11th Cir. 1990), a different rule applies when the defendant elects not to proceed to trial: "[J]eopardy normally attaches when the court unconditionally accepts a guilty plea." Baggett, 901 F.2d at 1548; United States v. Sanchez, 609 F.2d 761, 762 (5th Cir. 1980) ("Jeopardy attaches with the acceptance of a guilty plea.").

8

There is no dispute that the district court unconditionally accepted McIntosh's plea of guilty to the first indictment. The parties instead dispute whether our ordinary rule, as stated in Baggett, applies in this case.

The government argues that jeopardy did not attach when the court accepted the plea because "this is not the 'normal' case." The government asserts, in a conclusory fashion, that "the general rule stated in Baggett should not apply" because the error and dismissal of the original indictment created "unusual circumstances." We disagree.

The "double jeopardy guarantee serves principally as a restraint on courts and prosecutors," Brown, 432 U.S. at 165, 97 S. Ct. at 2225, and "prosecutorial negligence [that] creates an arguable procedural error," Wilcox v. McGee, 241 F.3d 1242, 1246 (9th Cir. 2001), is not exceptional so as to require a departure from our well-settled precedent in Baggett. Although the original indictment stated the wrong date of the offenses, that flaw was not fatal. The Supreme Court in Ledbetter v. United States, 170 U.S. 606, 612, 18 S. Ct. 774, 776 (1898), long ago explained that it is not "necessary to prove that the offense was committed upon the day alleged, unless a particular day be made material by the statute creating the offense. Ordinarily, proof of any day before the finding of the indictment, and within the statute of limitations, will be sufficient." The error in the original

9

indictment was, at most, procedural.

Although the Double Jeopardy Clause "does not erect a per se bar against multiple trials," United States v. Bobo, 419 F.3d 1264, 1267 (11th Cir. 2005), it plainly "protects against a second prosecution for the same offense after conviction," Pearce, 395 U.S. at 717, 89 S. Ct. at 2076. The acceptance of McIntosh's unconditional plea of guilt to the first indictment constituted convictions for the drug and firearm offenses: The acceptance of an unconditional plea "is itself a conviction. Like a verdict of a jury it is conclusive. More is not required; the court has nothing to do but give judgment and sentence." Kercheval v. United States, 274 U.S. 220, 223, 47 S. Ct. 582, 583 (1927); see also United States v. Linetsky, 533 F.2d 192, 198 n.5 (5th Cir. 1976) ("[D]ouble jeopardy does not require a final judgment."). A second conviction for the same offense violates the Double Jeopardy Clause. Pearce, 395 U.S. at 717, 89 S. Ct. at 2076.

The district court erroneously concluded that the dismissal of the original indictment "effectively withdr[ew]" McIntosh's guilty plea. When the district court granted the motion of the government to dismiss the first indictment, McIntosh had already pleaded guilty and been convicted of the offenses charged in the indictment, see Kercheval, 274 U.S. at 223, 47 S. Ct. at 583, but the district court did not vacate the convictions or set aside the guilty plea. Although "form is

10

not to be exalted over substance in determining the double jeopardy consequences of a ruling terminating a prosecution, neither is it appropriate entirely to ignore the form of order entered by the trial court." Sanabria v. United States, 437 U.S. 54, 66, 98 S. Ct. 2170, 2180 (1978) (citations omitted). McIntosh has not yet been sentenced based on his plea of guilt in the first case, but his conviction still exists and awaits a sentence.

A fatal defect in an indictment may permit a second indictment, Illinois v. Somerville, 410 U.S. 458, 463–64, 93 S. Ct. 1066, 1070 (1973); Ball, 163 U.S. at 669–70, 16 S. Ct. at 1195; Bobo, 419 F.3d at 1267, but McIntosh's original indictment did not contain that kind of flaw. "[I]t is a well-settled rule of criminal practice that the date of an alleged offense, as stated in an indictment, is not binding on the United States, and is only material in reference to the bar of limitation, and to show that the offense was committed anterior to the presentment of the indictment." Hume v. United States, 118 F. 689, 696 (5th Cir. 1902); see also United States v. Steele, 178 F.3d 1230, 1234 (11th Cir. 1999). The original indictment listed the date of the offense as February 21, 2007, which was before the date the indictment was filed, September 27, 2007, and within the statute of limitations from the actual date of the offense, November 12, 2005. 18 U.S.C. § 3282. Because the date of the offense was not an essential element of the offense,

11

the error in the original indictment was of form, not substance, and was not fatally defective. Steele, 178 F.3d at 1234; Hume, 118 F. at 696; see also Branch v. Estelle, 631 F.2d 1229, 1233 (5th Cir. 1980). The error in the original indictment also was cured so long as McIntosh's plea of guilt was knowing and voluntary. United States v. Smith, 532 F.3d 1125, 1127 (11th Cir. 2008) ("The general rule is that a guilty plea waives all non-jurisdictional challenges to a conviction."); United States v. Deal, 678 F.2d 1062, 1064 n.4 (11th Cir. 1982).

The best argument of the government, that McIntosh impliedly consented to his second indictment, also fails. The government relies on our decision in United States v. Puleo, 817 F.2d 702 (11th Cir. 1987), but that reliance is misplaced. We stated in Puleo "that when a defendant has had an opportunity to object to the declaration of a mistrial and fails to do so his consent to the declaration of a mistrial may be implied," id. at 705, but Puleo does not apply to the dismissal of McIntosh's first indictment. We cannot conclude that McIntosh's "consent may be . . . 'implied from the totality of the circumstances,'" id. (quoting United States v. Goldstein, 479 F.2d 1061, 1067 (2d Cir. 1973)). McIntosh stated that he was not agreeing "to any remedy that the government might fashion." Later, the government and the district court also agreed on the record that McIntosh's failure to object "didn't mean he was acquiescing in a subsequent indictment." McIntosh

12

did not impliedly consent to the second indictment.

The district court erred when it denied McIntosh's motion to dismiss the second indictment. "Legal consequences ordinarily flow from what has actually happened, not from what a party might have done from the vantage of hindsight." Sanabria, 437 U.S. at 65, 98 S. Ct. at 2179. McIntosh's initial conviction was never vacated, and the Double Jeopardy Clause prohibited a second prosecution of McIntosh for the same offenses. See Pearce, 395 U.S. at 717, 89 S. Ct. at 2076; United States ex rel. Stevens v. Circuit Court of Milwaukee County, Wis., 675 F.2d 946, 948 (7th Cir. 1982) (It would "violate the double jeopardy clause to try Stevens for the same offense for which he was convicted on his plea of guilty.").

## IV. CONCLUSION

McIntosh's judgment of conviction is **VACATED**, and this case is **REMANDED** with instructions to dismiss the second indictment.