[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-14089
Non-Argument Calendar
_____

D.C. Docket No. 1:12-cr-00181-MHT-WC-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

EDWARD LINCOLN FOREHAND,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Alabama
_____

(August 19, 2014)

Before HULL, MARCUS and WILSON, Circuit Judges.

PER CURIAM:

Edward Forehand appeals his convictions and sentences for five counts of

wire fraud, in violation of 18 U.S.C. § 1343, two counts of mail fraud, in violation

of 18 U.S.C. § 1341, two counts of securities fraud, in violation of 15 U.S.C. §§ 77q(a)(2), 77x, and four counts of monetary transactions in criminally derived property, in violation of 18 U.S.C. § 1957.  First, Forehand argues that the district court erred in applying a sophisticated means enhancement.  Forehand concedes that the scheme was sophisticated; however, he contends that because he was not involved in the sophisticated aspects of the scheme, the enhancement should not apply.  Second, Forehand argues that there is insufficient evidence to sustain his convictions because the government failed to establish that he acted with the required intent.   After review of the parties' briefs and the record on appeal, we affirm Forehand's convictions and sentence.

## I.  BACKGROUND

According to the indictment, from about early 2006 through November 2009, Forehand solicited investments from individuals using the unincorporated business name USA Marketing.  Forehand's "pitch" was that he had a relationship with an individual, the "associate," whose business, Elite, had agreements with colleges and universities to sell them cookware.  In turn, the schools would sell the cookware as a fundraiser.  Elite required financing to purchase the cookware, but the profit margin was large and Elite could afford to pay high rates of return to individuals who would provide financing.  Prospective investors received these representations directly from Forehand or from persons who detailed what they had

2

heard about investing in Elite. Forehand provided most investors with an Investment Receipt Acknowledgement (IRA), which recited the amount of the investment, the purpose of the investment (investing in Elite), and promised an annual rate of return ranging from 175% to 325%.

In reality, Forehand used investor funds for purposes other than investment and only forwarded to Elite approximately 20% of the funds he received from investors. He used the remaining funds to repay investors or for his personal expenses. He failed to disclose the associate's identity, in part, because she had two prior criminal convictions. Her true name was Vicky Yeager, and Forehand had known her for many years.

He also failed to disclose that in early August 2009, six checks from Elite to USA Marketing totaling approximately $600,000 bounced. Elite never made good on the checks, and from that point forward, Forehand stopped sending any investor money to Elite. He failed to tell the investors about the bounced checks. On or about November 10, 2009, Yeager died and neither she nor Elite had any significant assets. After Yeager died, Forehand paid no further funds to investors.

## II. Discussion

Forehand raises two arguments on appeal. We address each in turn.

### A. Sophisticated Means Enhancement

3

Forehand first argues that the district court improperly enhanced his sentence by applying a "sophisticated means" enhancement.  We "review[] the district court's interpretation and application of the sentencing guidelines de novo." *United States v. Machado*, 333 F.3d 1225, 1227 (11th Cir. 2003).  Section 2B1.1(b)(10)(C) of the Sentencing Guidelines provides a two-level enhancement if the offense involved "sophisticated means."  U.S.S.G. § 2B1.1(b)(10)(C).  The commentary in the Guidelines defines "sophisticated means" as "especially complex or especially intricate offense conduct" that pertains to executing or concealing the offense.  *Id.* § 2B1.1, cmt. n.9(B).  We have held that each of a defendant's individual actions need not be sophisticated, provided that the totality of the scheme was sophisticated.  *United States v. Ghertler*, 605 F.3d 1256, 1267 (11th Cir. 2010).  Even where aspects of a defendant's scheme were not sophisticated and the defendant sometimes makes "little or no effort to conceal either the fact of his fraud or his identity," we have upheld a sentence where the district court applied the sophisticated means enhancement when the totality of the scheme to defraud was sophisticated.  *Id.* at 1268.  In *United States v. Bane*, we concluded that, where the offenses involved repetitive, coordinated conduct designed to allow the defendant to execute his fraud and evade detection, a sophisticated means enhancement was appropriate.  720 F.3d 818, 827 (11th Cir.), *cert. denied*, 134 S. Ct. 835 (2013).

4

Forehand's offense was complex and intricate, both in its execution and in concealment. *See* § 2B1.1, cmt. n.9(B). The evidence presented at trial established that Forehand's "offenses involved repetitive, coordinated conduct designed to allow him to execute his fraud and evade detection." *Id.* For several years, Forehand solicited funds from investors and deposited them into an account owned solely by him doing business as USA Marketing. Most of the money did not go to Vicky Yeager to purchase cookware. The money that went into Forehand's bank account was used to pay prior investors their returns on their investments or was used by Forehand for his own personal expenses and pleasures.

Furthermore, Forehand sent Yeager less than one-half of the investment funds. He concealed Yeager's identity, a woman who had previously been convicted of fraud, which allowed him to further the scheme. Even after Yeager wrote bad checks, Forehand continued to perpetuate the scheme, accepting investments from 42 new individuals. Based on these considerations, the district court did not err in imposing a sophisticated means enhancement.

## B. Sufficiency of the Evidence

Forehand next contends that there is insufficient evidence to sustain his convictions. We review the sufficiency of the evidence de novo. *United States v. Maxwell*, 579 F.3d 1282, 1299 (11th Cir. 2009). "[T]he standard applied is the same whether the evidence is direct or circumstantial." *United States v. Utter*, 97

5

F.3d 509, 512 (11th Cir. 1996). In determining whether there is sufficient evidence to support the convictions, "we must view the evidence in the light most favorable to the government and decide whether a reasonable fact finder could have reached a conclusion of guilt beyond a reasonable doubt." *United States v. Herrera*, 931 F.2d 761, 762 (11th Cir. 1991). "Proof may be established through circumstantial evidence or from inferences drawn from the conduct of an individual." *Utter*, 97 F.3d at 512. "[C]redibility determinations are the exclusive province of the jury." *United States v. Calderon*, 127 F.3d 1314, 1325 (11th Cir. 1997) (internal quotation marks omitted). Statements by the defendant, if disbelieved by the jury, can be considered substantive evidence of the defendant's guilt. *United States v. Brown*, 53 F.3d 312, 314 (11th Cir 1995). Forehand argues that the evidence was insufficient to establish the intent element of each of the offenses. Because the government presented sufficient evidence of Forehand's intent, we affirm his convictions.

### 1. Counts One through Five: Wire Fraud

Counts One through Five of the indictment charged Forehand with committing wire fraud in violation of 18 U.S.C. § 1343.

> Mail and wire fraud are analytically identical save for the method of execution. Both offenses require that a person (1) intentionally participates in a scheme or artifice to defraud another of money or property, and (2) uses or causes the use of the mails or wires for the purpose of executing the scheme or artifice. The first element, a scheme or artifice to defraud, requires proof of a material

6

> misrepresentation, or the omission or concealment of a material fact calculated to deceive another out of money or property. A misrepresentation is material if it has a natural tendency to influence, or is capable of influencing, the decision maker to whom it is addressed.

*United States v. Bradley*, 644 F.3d 1213, 1238–39 (11th Cir. 2011) (footnotes, citations, and internal quotation marks omitted). "Proof of intent to defraud is necessary to support convictions for mail and wire fraud." *Id.* at 1239. "An intent may be found when the defendant believed that he could deceive the person to whom he made the material misrepresentation out of money or property of some value." *Maxwell*, 579 F.3d at 1301 (internal quotation marks omitted). "A jury may infer an intent to defraud from the defendant's conduct." *Bradley*, 644 F.3d at 1239 (internal quotation marks omitted). "Evidence that a defendant personally profited from a fraud may provide circumstantial evidence of an intent to participate in that fraud." *Id.* (internal quotation marks omitted).

There is sufficient evidence to demonstrate that Forehand had the requisite intent required for wire fraud. At trial, the circumstantial evidence presented by the government demonstrated that Forehand personally and repeatedly misrepresented or omitted material facts in an attempt to influence investors to invest in his scheme. For example, the victim-investors testified at trial that had they known that Forehand's business partner was a convicted fraudster, they would not have invested with Forehand. Likewise, the victim-investors testified that had

they known that Forehand's business partner had bounced hundreds of thousands of dollars in checks to him and other investors, they would not have invested with him. These material misrepresentations to the victim-investors demonstrate Forehand's intent to defraud those investors. *See id.* ("A jury may infer an intent to defraud from the defendant's conduct."). Furthermore, Forehand profited significantly from the fraud scheme. This is further circumstantial evidence of his intent to participate in the fraud. *See id.* Accordingly, we affirm the wire fraud convictions.

### 2. Counts Six and Seven: Mail Fraud

Forehand was also convicted of two counts of mail fraud (Counts Six and Seven). A third count of mail fraud, Count Eight, was dismissed after the jury verdict on motion from the government. As noted above, "[m]ail and wire fraud are analytically identical save for the method of execution." *Id.* at 1238.

As discussed with respect to wire fraud, the evidence at trial established that Forehand had the necessary intent to deceive the victim-investors because he lied to them about material facts in order to obtain their money. *See id.* The government demonstrated that Forehand had the necessary intent required to sustain his mail fraud convictions. *See id.*

Additionally, Forehand takes issue with the dates listed for Count Six only. Forehand argues that there was a material difference between the charges as listed

8

in the indictment from the evidence presented at trial; specifically the dates proved for those crimes were different from the dates alleged.  "[T]ime is not an essential element of the offense, so long as the government establishes that the conduct occurred reasonably near the date that the indictment mentions."  *United States v. Pope*, 132 F.3d 684, 688–89 (11th Cir. 1998).  "Ordinarily, we will not disturb a conviction due to a variance between the date the indictment alleges the offense occurred and the date the proof shows that it occurred if the date shown at trial falls within the statute of limitations and before the return of the indictment." *United States v. Roberts*, 308 F.3d 1147, 1156 (11th Cir. 2002) (per curiam). "Two purposes are served by the requirement that the allegations of the indictment and the proof at trial correspond: (1) the defendant is properly notified of the charges so that he may present a defense; and (2) the defendant is protected against the possibility of another prosecution for the same offense."  *Id.* (internal quotation marks omitted).  In *United States v. McIntosh*, we concluded that because the date of the offense was not an essential element of the offense, the error was of form, not substance, and was not fatally defective.  580 F.3d 1222, 1228 (11th Cir. 2009).

With respect to Count Six, there is only an eight-day difference between the date alleged in the indictment and the date testified to at trial.  The indictment alleged that the mail fraud took place on October 20, 2008.  The testifying witness

said that he received the fraudulent document on October 28, 2008.  The mail fraud

occurred reasonably near when the indictment alleged, and it occurred within the

statute of limitations and prior to the return of the indictment.  *See Pope*, 132 F.3d

at 688–89; *Roberts*, 308 F.3d at 1156.

The indictment charged that on or about October 20, 2008, Forehand mailed

an IRA to "KT" in Dothan, Alabama.  The evidence at trial established that on

October 28, 2008, Kevin Tillman received in the mail an IRA from Forehand.

Forehand admitted at trial there was only one KT on the list of victims provided to

him, and that victim was Kevin Tillman.  He admitted at trial that he had adequate

notice of this charge.  Forehand's argument as to this issue fails.

### 3.  Counts Nine and Ten: Securities Fraud

Forehand was charged in counts nine and ten of his indictment with

securities fraud in violation of 15 U.S.C. §§ 77q(a)(2) and 77x.  To show a

violation of 15 U.S.C. § 77q(a)(2), the government must prove: "(1) a material

misrepresentation or materially misleading omission, (2) in the offer or sale of a

security, (3) made with negligence."  *S.E.C. v. Morgan Keegan & Co.*, 678 F.3d

1233, 1244 & n.12 (11th Cir. 2012) (per curiam).  Section 77x provides that "[a]ny

person who willfully violates any of the provisions of [§ 77x]" or "makes any

untrue statement of a material fact or omits to state any material fact required to be

stated therein or necessary to make the statements therein not misleading" commits a criminal offense.  15 U.S.C. § 77x.

On appeal, Forehand does not present any argument to support his contention that there was insufficient evidence to uphold his convictions for securities fraud.  The government established all the elements of securities fraud by presenting evidence that Forehand sold securities to investors by either intentionally or negligently making both material misrepresentations to investors, and by omitting material information relevant to the investment decision.  And he did so by using facilities in interstate commerce: the mail, telephones, and the internet.

Forehand made intentionally false assertions to investors that their money would be used to purchase pots and pans when he knew that he was using the money to pay off earlier investors and to pay himself.  The investors relied on Forehand's material misrepresentations to invest in securities offered by Forehand for sale.  Forehand's convictions for securities fraud are affirmed.

### 4.  Counts Eleven through Fourteen: Money Laundering

To convict a defendant of money laundering under 18 U.S.C. § 1957, the government must prove that: (1) the defendant "knowingly engage[d] or attempt[ed] to engage in a monetary transaction in criminally derived property that is of a value greater than $10,000," and (2) the property "is derived from specified

11

unlawful activity." *See United States v. Silvestri*, 409 F.3d 1311, 1332–33 (11th Cir. 2005) (internal quotation marks omitted). Proof of fraud is necessary to support a conviction for engaging in monetary transactions in property derived from specified unlawful activity. *United States v. Naranjo*, 634 F.3d 1198, 1207 (11th Cir. 2011). "A scheme to defraud requires proof of a material misrepresentation, or the omission or concealment of a material fact calculated to deceive another out of money or property." *Id.* (internal quotation marks omitted). "A jury may infer an intent to defraud from the defendant's conduct." *Id.* (internal quotation marks omitted). "Evidence that a defendant personally profited from a fraud may provide circumstantial evidence of an intent to participate in that fraud." *Bradley*, 644 F.3d at 1239 (internal quotation marks omitted).

At trial, the government presented sufficient evidence to establish that Forehand knowingly engaged in monetary transactions in criminally derived property, when, on the dates alleged in the indictment, he used funds derived from his fraud in amounts greater than $10,000, for his own personal use or for the benefit of a relative. He made material misrepresentations and omitted material facts when he pitched his scheme to investors, and he personally benefited significantly from this scheme to defraud. Accordingly, his convictions for money laundering are affirmed.

**AFFIRMED.**

12