# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
August 12, 2022

Lyle W. Cayce
Clerk

No. 18-41085

UNITED STATES OF AMERICA,

*Plaintiff—Appellee*,

*versus*

CORY HAYS SLAPE,

*Defendant—Appellant*.

---

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 4:17-CV-22

---

Before RICHMAN, *Chief Judge*, and CLEMENT and ENGELHARDT, *Circuit Judges*.

KURT D. ENGELHARDT, *Circuit Judge*:

Defendant-Appellant Cory Hays Slape appeals the district court's denial of his 28 U.S.C. § 2255 habeas corpus petition. Slape claims that his trial counsel was ineffective in failing to challenge asserted violations of Slape's double jeopardy rights.

For the reasons that follow, we AFFIRM.

I

A

In 2011 and 2012, Cory Hays Slape dealt heroin and marijuana to a group of regular customers. Slape's most notable patron was a 16-year-old girl who overdosed on heroin she purchased from Slape, but thankfully survived her resulting brush with death. Searches of Slape's car and bedroom uncovered three guns and a full complement of drug-dealing paraphernalia.

In April 2012, a federal grand jury charged Slape with conspiracy to distribute and possess with intent to distribute more than 100 grams but less than one kilogram of heroin. In April 2013, the same grand jury returned a superseding indictment including three additional firearms charges and alleging that the same drug-dealing conspiracy involved a higher quantity and greater mix of illicit drugs. After initially pleading not guilty, Slape pleaded guilty at trial. In exchange for Slape's guilty plea on the superseding indictment's principal drug-dealing charge ("Count 1"), the Government dismissed all other charges. The parties stipulated to a recommended prison sentence of 240 months. The district court followed the parties' sentencing recommendation and dismissed all remaining counts in the superseding indictment "on the motion of the United States."

Some months later, the Government discovered the procedural snag at the heart of this case: the superseding indictment to which Slape pleaded guilty had been returned by a grand jury whose term had expired. The Government promptly notified Slape—who was then incarcerated in Arkansas—of the mistake. In April 2015, Slape's appointed counsel informed him that the Government was "prepared to offer" him a 144-

month sentence if he pleaded guilty to the *original* indictment, which *had* been returned during the grand jury's rightful term.[1]

Unfazed by its mix-up, the Government persisted in its efforts to prosecute Slape. In May 2015, a new grand jury returned a new indictment charging Slape with the same drug-dealing conspiracy alleged in Count 1 of the original grand jury's untimely superseding indictment. Conceding "that the indictment to which the defendant was convicted and sentenced [was] invalid because it was returned by a grand jury whose term had expired," the Government moved to dismiss that indictment. The district court granted the Government's motion and dismissed the faulty superseding indictment without prejudice.

In October 2015, Slape struck a new plea deal with the Government. In a revised plea agreement, Slape agreed to plead guilty to an information charging him with conspiracy to distribute and possess with intent to distribute a lesser quantity of heroin than that alleged in Count 1 of the faulty superseding indictment he was originally convicted and sentenced on. This time, however, the parties stipulated to a reduced prison sentence of 144 months—an 8-year decrease from Slape's initial sentence. To acknowledge Slape's time served on the invalid initial charge, the parties included the following special provision:

> The parties recommend that the Court include the following in the judgment: "The defendant is hereby committed to the custody of the Attorney General for a 144-month term of incarceration. In reviewing the defendant's

---

[1] As the Government now observes, "the parties apparently overlooked that the [original] indictment had been dismissed." This mix-up has little practical import on appeal, but it does contribute to Slape's overall impression "that this whole situation is a complete mess and it is a mess that was created by the Government's mistakes with the grand jury and the dismissal."

eligibility for prior custody credit in accordance with 18 U.S.C. § 3585(b), the Bureau of Prisons shall evaluate time defendant spent in custody in [connection with the prior federal criminal action against him]. The indictment in that case has been dismissed as void. The Court finds that the offense for which defendant spent time in custody [in that case] is the same offense as that for which sentence is imposed in this case. Insofar as necessary to have the same effect as if the term began on the original date of imposition, and in accordance with Sentencing Guideline 5G1.3, the 144-month term shall be reduced by the amount of prior custody credit that is unable to be applied as a result of 18 U.S.C. § 3585(b) for the period of confinement between the date of imposition of the original term for this offense and the date of this judgment."

At a plea hearing in which Slape indicated satisfaction with his trial counsel's performance and familiarity with the "grand jury mess-up[]" that had occurred in his initial case, Slape pleaded guilty in accordance with the new plea agreement. The district court then imposed the 144-month sentence the parties agreed to and noted for the record the key terms of the provision quoted above.

B

While serving his revised prison sentence in 2017, Slape filed a § 2255 habeas corpus petition alleging double jeopardy violations and ineffective assistance of trial counsel. In his petition to the district court, Slape made essentially the same arguments he now makes in this court. In Slape's telling, legal jeopardy attached at the opening of the 2013 jury trial during which he ultimately decided to plead guilty and terminated when his original sentence was imposed in 2014. This attachment-and-termination, Slape contends, rendered the Government's subsequent prosecution for what it admitted was the same criminal conduct an unconstitutional double jeopardy violation,

which in turn rendered the failure of Slape's trial counsel to object to—or even *raise the possibility of*—such a violation ineffective assistance of counsel.

Without conducting a hearing, the district court accepted a magistrate's recommendation that Slape's § 2255 motion be denied. Slape appeals that ruling here. As explained below, we agree with the district court. Slape's trial counsel cannot be deemed ineffective for failing to advance arguments that have no merit to begin with.

## II

We begin with Slape's ineffective assistance of counsel claim. The legal standard for Sixth Amendment ineffective-assistance claims is familiar and exacting. To prevail on an ineffective-assistance claim, a convicted defendant must show both (1) deficient performance and (2) prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "The proper standard for attorney performance is that of reasonably effective assistance," and "an error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 687, 691 (cleaned up).

In this case, Slape fails to make either of *Strickland*'s twin showings. Start with "deficient performance." Slape's argument on this issue is straightforward and reducible, in essence, to the following tautology: (1) Slape's trial counsel was ineffective in failing to inform him of a glaring double jeopardy issue that reasonably effective counsel would have used to fatally undermine the legal basis for Slape's second guilty plea; and (2) the failure of Slape's trial counsel to raise or advise of this glaring issue subjected Slape to a Fifth Amendment double jeopardy violation that renders his present conviction invalid.

However you slice it, Slape's argument rests on a fundamental assumption: namely, that a double jeopardy issue that any reasonably

effective lawyer would have noticed and advised his client of in fact existed in the first place. We hold today that such an issue did *not* exist in Slape's case, but it bears noting that we need not do so to reject Slape's argument for deficient performance.

*Strickland*'s deficiency prong requires defendants to "demonstrate that [their] attorney's performance fell below an objective standard of reasonableness." *United States v. Herrera*, 412 F.3d 577, 580 (5th Cir. 2005). "This reasonableness standard requires counsel 'to research relevant facts and law, or make an informed decision that certain avenues will not prove fruitful,'" *United States v. Phillips*, 210 F.3d 345, 348 (5th Cir. 2000) (quoting *United States v. Williamson*, 183 F.3d 458, 462 (5th Cir. 1999)), which in turn demands that "solid, meritorious arguments based on directly controlling precedent be discovered and brought to the court's attention." *Williamson*, 183 F.3d at 463 (cleaned up). Because no such arguments and "directly controlling precedents" were available to Slape's trial counsel here,[2] he could not have flunked this test. As we've consistently observed, the Sixth Amendment's reasonableness standard does not require counsel to guess correctly on questions of first impression, but merely to present "directly controlling precedents" in support of meritorious arguments their clients might beneficially advance. *See, e.g.*, *Williamson*, 183 F.3d at 462–63. There is no indication here that Slape's trial counsel failed to meet this modest professional obligation, and as a result, there is no indication that Slape received constitutionally deficient representation.

---

[2] If such precedents did exist, we trust that Slape's capable appellate counsel would have brought them to the court's attention. Tellingly, he did not, instead staking Slape's entire appeal on the inapposite Eleventh Circuit case of *United States v. McIntosh*, 580 F.3d 1222 (11th Cir. 2009).

Moreover, Slape's trial counsel cannot possibly be deemed ineffective for an even more fundamental reason: because ineffective assistance of counsel cannot arise from the "failure to raise a legally meritless claim," and—as we hold below—Slape's double jeopardy argument is just that. *See Smith v. Puckett*, 907 F.2d 581, 585 n.6 (5th Cir. 1990) ("Counsel is not deficient for, and prejudice does not arise from, failure to raise a legally meritless claim.").

## III

Slape's argument that a double jeopardy violation occurred is similarly straightforward and unavailing. As Slape contends, the "Fifth Amendment's Double Jeopardy Clause protects against a second prosecution for the same offense after conviction," as well as "multiple punishments for the same offense," and both of those things occurred here. Indeed, Slape continues, the "Government reindicted [him] in the 2015 case one week before it filed its motion to dismiss the original indictment and three weeks before the district court entered an order granting [its] dismissal," so consequently, "[t]he 2015 case was a second prosecution for the same offense after Slape's conviction in the 2012 case."

This claim is eye-catching in the abstract—particularly considering the Government's fault in bungling Slape's original case—but it withers under closer examination. As the Government correctly notes, the Double Jeopardy Clause[3] requires more than the mere appearance of a successive prosecution and/or punishment; it requires defined instances of the "attachment" and "termination" of a valid course of prosecutorial jeopardy.

---

[3] The Fifth Amendment's Double Jeopardy Clause provides that "nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V.

*See United States v. Garcia*, 567 F.3d 721, 730 (5th Cir. 2009) ("In the successive prosecution context, the authorities hold that a defendant's double jeopardy concerns arise only after original jeopardy attaches *and* terminates."). Here, neither attachment nor termination occurred in the Government's initial prosecution of Slape—however ham-fisted it may have been.

In a jury trial, "jeopardy attaches when the jury is empaneled and sworn." *United States v. Stricklin*, 591 F.2d 1112, 1120 (5th Cir. 1979). As a result, because Slape went to trial on the 2013 superseding indictment before deciding to plead guilty midtrial, it might appear at first glance that jeopardy *did* attach in the course of Slape's initial prosecution. "But this is not an ordinary case," the Government asserts, "because the 2013 [superseding] indictment was void from the outset."

The Government is correct. We have never held directly that an indictment returned by a defunct, out-of-term grand jury is void ab initio, but at least two other circuits have,[4] and we join those circuits in doing so today. Our determination that an out-of-term grand jury's indictment is void ab initio—meaning "null from the beginning,"[5] and therefore without legal effect—accords with the well-established rule that a federal grand jury loses all legal authority at the conclusion of its term, which may run for a maximum

---

[4] The Government identifies the Second and Seventh Circuits as sister circuits that have reached the natural conclusion that the acts of an expired grand jury are void ab initio. *See United States v. Macklin*, 523 F.2d 193, 197 (2d Cir. 1975) (allowing the reindictment of a defendant in a similar case because "[s]ince the grand jury had no power to indict," its initial actions were "void ab initio"); *United States v. Bolton*, 893 F.2d 894, 895, 898–901 (7th Cir. 1990) (per curiam) (affirming district court's determination "that since the grand jury had not been validly extended, the indictment was a nullity so that there was no jurisdiction to try" the defendant initially).

[5] *See, e.g.*, *Void Ab Initio*, Black's Law Dictionary (5th ed. 2016) (cleaned up).

of twenty-four months. *See* Fed. R. Crim. P. 6(g); 1 Fed. Prac. & Proc. Crim. (Wright & Miller) § 114 (4th ed. 2021) ("Once the grand jury is discharged or its term has expired it no longer has any legal authority, and *an indictment issued by an expired grand jury has no effect . . . .*" (emphasis added)).

There are good practical reasons for such a rule as well. For starters, the Supreme Court and this court have consistently placed substantive and technical realities ahead of mere appearances in double jeopardy cases. As both courts have observed, the mere *appearance* of a successive prosecution—and even the erroneous *conviction* or *acquittal* of a defendant in certain invalid proceedings—does not suffice for the attachment of jeopardy where a "fatal defect" in a criminal prosecution renders the proceedings "void." *See, e.g.*, *Ball v. United States*, 163 U.S. 662, 669 (1896) ("An acquittal before a court having no jurisdiction is, of course, like all the proceedings in the case, absolutely void, and therefore no bar to subsequent indictment and trial in a court which has jurisdiction of the offense."); *Schlang v. Heard*, 691 F.2d 796, 798 (5th Cir. 1982) (per curiam) (subsequent trial of defendant was not barred by Double Jeopardy Clause even where defendant had been *tried and convicted* on a "fatally defective" charge that failed to allege required mens rea). Such is the case here as well, where an initial prosecution and guilty plea were premised on a superseding indictment returned by a grand jury made legally defunct by the expiration of its term. *See, e.g.*, Wright & Miller, *supra*, § 114.

Importantly—and as would be true in any similar case—our recognition of the voidness ab initio of the faulty indictment on which Slape was initially sentenced affronts neither of "the twin aims of the Double Jeopardy Clause: protecting a defendant's finality interests and preventing prosecutorial overreaching." *United States v. Brune*, 991 F.3d 652, 659 (5th Cir. 2021) (quoting *United States v. Patterson*, 406 F.3d 1095, 1097 (9th Cir.

2005) (Kozinski, J., dissenting from denial of rehearing en banc)). Put simply, this is not a case where Slape's finality interests were offended by a successive prosecution—indeed, Slape was not acquitted but later reindicted by pesky prosecutors, but was actually *benefited* by the Government's mistake, which resulted in an 8-year reduction in the sentence Slape ultimately received for the very same crimes. Nor is this a case of prosecutorial overreach—indeed, in admitting its mistake and promptly pursuing a valid reindictment, the Government ensured that Slape was held accountable for his serious criminal conduct but also treated fairly and rewarded with sentencing credit for all time erroneously served. As such, this is a far cry from the paradigmatic double jeopardy scenario the ratifiers of the Fifth Amendment envisioned. There, the Government makes "repeated attempts to convict an individual, thereby exposing him to continued embarrassment, anxiety, and expense, while increasing the risk of an erroneous conviction or an impermissibly enhanced sentence." *Ohio v. Johnson*, 467 U.S. 493, 498–99 (1984). Here, prosecutors admitted an honest (and nonprejudicial) mistake while ensuring that Slape was held accountable for serious criminal charges he voluntarily pleaded guilty to.

Slape's counterarguments fall flat. The sole case Slape relies on in support of his position is the Eleventh Circuit case of *United States v. McIntosh*, 580 F.3d 1222 (11th Cir. 2009). There, the Eleventh Circuit found a double jeopardy problem with the Government's voluntary dismissal of an indictment bearing the relatively benign and nonfatal flaw of an incorrect date. *Id.* at 1225–29. Citing Supreme Court cases including *Ball* (*supra*), the court acknowledged that a "*fatal* defect in an indictment *may* permit a second indictment," but simply concluded that the voluntarily dismissed indictment at issue "did not contain that kind of flaw." *Id.* at 1228 (emphasis added). For that reason, *McIntosh* actually supports the *Government*'s position in this case. As noted above, there is abundant reason to deem the flaw at issue here

a fatal one—and, thus, the kind of flaw that places a case within the class of void prosecutions that are legally incapable of placing a defendant in genuine criminal jeopardy.

With little caselaw to back his position, Slape resorts to a "bottom line" argument "that this whole situation is a complete mess and it is a mess" of the Government's doing. Slape specifically asserts that the Government's faulty initial conviction of Slape muddies Slape's criminal record, "subject[s] him to enhanced punishments in any future criminal proceeding," and "impact[s] his ability to seek employment and to live life in general." On these points, Slape is mistaken. Contrary to his suggestion, our ruling today makes plain that Slape's initial conviction and sentence were null and void because they were premised on an indictment that was void ab initio. Any employer or government body need only read this opinion to disabuse themselves of any misimpression the Government's unfortunate mix-up in this case may have caused concerning Slape's criminal history. Lest any doubt remain, the record is now clear: Slape was not convicted of the same crime twice; and he was not exposed to an unfairly enhanced punishment (in fact, quite the opposite); he *was*, however, held accountable for a crime made no less severe by an honest error spotted and corrected by respectable prosecutors who both complied with the Double Jeopardy Clause and treated Slape with fairness and dignity to boot.

\*　　\*　　\*

It follows from the rule we've announced today that the expired grand jury's untimely superseding indictment in Slape's first criminal case was null and void when jeopardy would have otherwise attached at Slape's jury trial and, accordingly, could not have placed Slape in actual legal jeopardy within the meaning of the Double Jeopardy Clause. Because the failure of Slape's trial counsel to advise Slape of a meritless double jeopardy argument was

No. 18-41085

neither deficient nor prejudicial, the district court was correct to deny Slape's habeas corpus petition.

AFFIRMED.